UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                                              Case No.: 17-bk-17672-JKO
                                                                    Chapter 13
RONALD MCKAY,

    Debtor.
_____/

**BELLA CONDOMINIUM'S ASSOCIATION, INC.'S RESPONSE
TO DEBTOR'S MOTION FOR CONTEMPT FOR VIOLATION OF
THE AUTOMATIC STAY AND FOR SANCTIONS PURSUANT TO
SECTION 105 AND 362(k) OF THE BANKRUPTCY CODE**

    This memorandum of law is respectfully submitted in support of Bella Condominium Association, Inc.'s (the "Creditor" or "Bella") response to Ronald McKay's (the "Debtor") application for contempt for violation of the automatic stay and for sanctions pursuant to 11 U.S.C. §§ 105, 362(k).

**PROCEDURAL HISTORY**

    On June 19, 2017, Debtor voluntarily petitioned for Chapter 13 relief pursuant to the United States Bankruptcy Code. [Dckt. No. 1]. In his petition, Debtor informs of his intent to surrender real property consisting of a condominium unit located at 526 Pacific Avenue, Apartment 808, Atlantic City, New Jersey, 08401 (the "Property"). *Id*. at p. 8. The petition also lists Bella Condominium Association, Inc. ("Bella") as a creditor relative to its lien against the Property representing Debtor's pre-petition arrearage of past-due association fees. *Id*. at p. 15. The address for Bella Condominium Association is given as "526 Pacific Ave., Atlantic City, NJ

1

08401-7662," which is the address of the entire condominium building, without a unit or suite number,  However, the registered agent for Bella at the time of filing was Tom Scannapieco, with a service of process address of is "103 Carnegie Center, Suite 300, Princeton, New Jersey, 08540," Scannapieco's business office. Scannapieco was the developer of Bella Condominium, and was the president of the Association at the time the Notice of Commencement was mailed.

On June 20, 2017, the Bankruptcy Noticing Center issued a Certificate of Notice attesting to the mailing of a Notice of Filing Chapter 13 Case and Notice to Debtor of Deadlines to Correct Filing Deficiencies to creditors listed by Debtor,  and informing them of the automatic stay. [Dckt. No. 10]. The Certificate of Notice indicate that notice was sent to Bella via postal mail only at 526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662. *Id*.

On July 5, 2017, the Bankruptcy Noticing Center issued two additional Certificates of Notice. [Dckt. No. 13–14]. The first Certificate of Notice includes Debtor's formal "Notice of Chapter 13 Bankruptcy Case" and was mailed to Bella via postal mail only at 526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662. [Dckt. No. 13]. The second Certificate of Notice includes Debtor's initial proposed "Chapter 13 Plan (Individual Basement of Debts)" and was mailed to Bella via postal mail only at 526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662. [Dckt. No. 14].

ON October 3, 2017, the Debtor amended his schedule listing the same address,  526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662 for Bela Condominium Association.

On October 6, 2017, the Bankruptcy Noticing Center issued a Certificate of Notice to all creditors listed by Debtor, informing them of the Court's Order affirming Debtor's compliance with filings requirements. [Dckt. No. 27]. Again, this notice was sent to Bella via postal mail only at 526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662. *Id*.

Bella was not properly noticed of Debtor's petition.

## STATEMENT OF FACTS

In mid-summer of 2017, Keith Silverman of SDC Realty of Atlantic City, an independent contractor who managed the condominium property pursuant to a management agreement, became aware that Debtor was gutting the Property, removing all fixtures including affixed cabinetry, plumbing and bathroom fixtures, and the proverbial kitchen sink. Silverman informed Doug Baker, Esq., a New Jersey attorney who was then counsel to Bella, of Debtors conduct. Baker advised Silverman to change the locks to the Property and that he filed a lien against the Property. Debtor, who did not reside in the Property, demanded access to the unit, and after discussing the bankruptcy filing with Silverman, was granted access to the unit. This occurred several times during the following months, and it became clear to Silverman that the Debtor was using the fact that he was in bankruptcy as a "sword" to gain access to the unit and continue to gut it, despite the fact that he was not paying post-petition condominium association fees, which pursuant to New Jersey law are secured by the unit. To protect the property from further commissive waste, Debtor was, after several incidents, denied access to the unit to prevent him from further acts of destruction.

## LAW APPLICABLE

The automatic stay immediately comes into effect upon the filing of a petition for relief under the Bankruptcy Code. *See* 11 U.S.C. § 362. The purpose of the automatic stay is to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay; it does not function to impair the exercise of available rights by creditors. *In re Daya Medicals, Inc*., 560 B.R. 855, 859 (Bankr.

3

S.D. Fla. 2016) (internal citation omitted). A violation of the automatic stay occurs when a creditor takes one of the acts proscribed by § 362(a). *See* 11 U.S.C. § 362(a).

There is a critical distinction between whether a creditor violated the automatic stay and whether the creditor's conduct in violation of the stay was willful and therefore, warrants sanctions pursuant to § 362(k). A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful violation which will subject a creditor to sanctions under § 362(h). *In re Keen*, 301 B.R. 749, 753 (Bankr. S.D. Fla. 2003) (citing *In re Smith*, 180 B.R. 311 (Bankr.N.D.Ga.1995)).

"The legislative history of the Bankruptcy Code notes two major purposes of the automatic stay. 'One of these purposes is protection of the estate for the benefit of creditors.... The other purpose [i]s to advance the debtor's fresh start, providing immediate relief from the pressure of collection activity.'" *In re Walker*, 356 B.R. 834, 854 (Bankr. S.D. Fla. 2006), aff'd sub nom. *Walker v. Lundborg*, No. 06-80810-CIV, 2007 WL 9701963 (S.D. Fla. Aug. 17, 2007), aff'd sub nom. *In re Walker*, 309 F. App'x 293 (11th Cir. 2009) (citing *In re Benalcazar*, 283 B.R. 514, 520–21 (Bankr.N.D.Ill.2002)). Where the function of the automatic stay is not frustrated, sanctions are unwarranted. *See generally In re Walker, supra* (the court held that where the conduct of the creditor did not diminish the debtor's property, increase his burdens, or impair his rights sanctions were unwarranted).

## ARGUMENT

I. **Bella Lacked Proper Notice of Debtor's Voluntary Petition Pursuant to § 342**

Any alleged violation of the automatic stay was not willful. A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful

violation which will subject a creditor to sanctions under § 362(h). *In re Keen*, 301 B.R. 749, 753 (Bankr. S.D. Fla. 2003) (citing *In re Smith*, 180 B.R. 311 (Bankr.N.D.Ga.1995)).

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Geo Specialty Chemicals Ltd.*, 577 B.R. 142, 185 (Bankr. D.N.J. 2017). In the bankruptcy context, whether notice "is reasonably calculated, under all the circumstances," to apprise creditors of the discharge of their claims depends on whether such creditors were "known" or "unknown." *In re New Century TRS Holdings, Inc.*, 450 B.R. 504, 512 (Bankr. D. Del. 2011); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 801 F. Supp. 684, 692 (S.D. Fla. 1992) (citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). If claimants are "known" creditors, due process entitles them to actual notice of the bankruptcy proceedings. *In re Geo Specialty Chemicals Ltd.*, 577 B.R. at 185.

> Pursuant to § 342(g)(1),
>
> Notice provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) shall not be effective notice until such notice is brought to the attention of such creditor. **If such creditor designates a person. . . to be responsible for receiving notices under this title and establishes reasonable procedures so that such notices receivable by such creditor are to be delivered to such person. . . then a notice provided to such creditor other than in accordance with this section (excluding this subsection) shall not be considered to have been brought to the attention of such creditor until such notice is received by such person. . .**

11 U.S.C. § 342(g)(1). Section 342(g)(2) further informs that,

> A monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) or for failure to comply with section 542 or 543 unless the conduct that is

5

the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief.

11 U.S.C. § 342(g)(2).

Bella is a known creditor. [Dckt. No. 1]. As a known creditor, due process requires that it be provided with notice of Debtor's bankruptcy petition. *In re Geo Specialty Chemicals Ltd*., 577 B.R. at 185. Title 11 of the United States Code provides the manner in which proper service is affected. *See* 11 U.S.C. 342. As indicated on Bella's Business Entity Information, a public document, filed with the New Jersey Department of Revenue and Enterprises Services, Bella designated Tom Scannapieco as its registered agent. *See* Exhibit "A," Bella New Jersey Business Entity Information. Bella's Business Entity Information further provides a service of process address for its registered agent at "103 Carnegie Center, Suite 300, Princeton, New Jersey, 08540." *Id*.

On June 19, 2017, Debtor voluntarily petitioned for Chapter 13 relief pursuant to the United States Bankruptcy Code. [Dckt. No. 1]. Bella is listed as a creditor in Debtor's First Day filing. Thus, the Court via the Bankruptcy Noticing Center attempted to issue a Notice of Filing and Certificate of Notice to Bella. However, the notice was not issued in accordance with § 342. As indicated on all Certificates of Notice issues by the Bankruptcy Noticing Center, prior to February 20, 2018, notice was repeatedly issued upon Bella at an incorrect address. [Dckt. No. 10, 13 –14, 27, 51]. The Bankruptcy Noticing Center repeatedly sent notice to Bella at via postal mail only at 526 Pacific Avenue, Atlantic City, New Jersey, 08401-7662. *Id*. Notice of Debtor's voluntary petition was never issued to Bella's registered agent, Tom Scannapieco, at the registered service of process address, 103 Carnegie Center, Suite 300, Princeton, New Jersey, 08540.

Furthermore, Debtor's motion for contempt and sanctions does not mention he or his counsel ever contacted Tom Scannapieco to inform him of the pending bankruptcy. Rather, Plaintiff asserts that on the date of the first alleged violation, July 7, 2017, his counsel spoke with the then property manager, Keith Silverman, and informed him of the active Chapter 13 bankruptcy. [Dckt. No. 52 at ¶ 21]. Then again on September 18, 2018, at the time of the second alleged violation, Debtor asserts that he spoke only with "management" as he went to the "management office" for keys. *Id*. at ¶¶23–28. Likewise, on January 18, 2018, the alleged third violation of the stay, and on February 7, 2018, the alleged fourth violation of the stay, Debtors indicates he spoke only with (the new) management for the Condominium. *Id*. at ¶¶ 30-44. Never once does Debtor assert that he addressed the proper registered agent to inform Bella of the active Chapter 13 bankruptcy.

Bella did not receive notice of Debtor's voluntary petition prior to January 31, 2018. [*See* Dckt. No. 52 at ¶ 9].

## II. Bella Condominium Association, Inc. Did Not Willfully Violate the Automatic Stay

In light of Debtor's failure to properly affect notice upon Bella, Bella did not willfully violate the automatic stay. Pursuant to § 362(a) of the Bankruptcy Code, which provides for the automatic stay, all collection remedies and any attempt to collect a pre-petition debt from the debtor must cease. 11 U.S.C. § 362(a). However, pursuant to § 362(k) a debtor may recover damages only where violation of the stay was *willful*. [Dckt. No. 52 at ¶ 46]. A violation of the automatic stay is willful if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay. *In re 5th Ave. Real Estate Dev., Inc*., No. 07-17581-PGH, 2008 WL 4371336, at *2 (Bankr. S.D. Fla. Sept. 19, 2008).

To establish a willful violation of the automatic stay, the movant bears the burden of showing by a preponderance of the evidence that: "(1) a bankruptcy petition was filed; (2) the violator received notice of the petition; and (3) the violator's actions were in willful violation of the automatic stay." *In re Govero,* 439 B.R. 917, 921 (Bankr. S.D. Fla. 2010) (citing *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir.2005)). Actions taken in violation of the stay, without notice of a bankruptcy, are "technical" violations of the stay, and courts have determined that no damages should be awarded for technical violations of the stay. *In re Hartigan*, No. 13-14612-AJC, 2013 WL 3043455, at *2 (Bankr. S.D. Fla. June 18, 2013).

In an effort to attain brevity, the movant herein directs the Court to Section I, which establishes that Bella did not receive proper notice of Debtor's Chapter 13 petition until, at the earliest, January 31, 2018. Thus, the knowledge element of willful violation is lacking. Therefore, this section analyze only whether the alleged conduct of Bella was intentional and whether such conduct violated the stay. *In re Govero,* 439 B.R. at 921 (citing *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir.2005)).

    a.    **Allegedly Intentional Acts by Bella**

Specific intent to violate the stay on the part of the violator is not required, only the act itself must be intentional. *In re White*, 410 B.R. 322, 326 (Bankr. M.D. Fla. 2009).

Prior to petitioning for relief under Chapter 13 of the Bankruptcy Code, Debtor left his keys to the Property with the main office of SDC Realty of Atlantic City. [Dckt. No. 52 at ¶ 19]. This was his common practice. *Id*. Following his petition, Debtor returned to the Property on July 7, 2017, and requested that the property manager, Keith Silverman, provide him with his keys. *Id*. Silverman denied Debtor's request. *Id*. at ¶¶ 19–21. Debtor's counsel contacted Silverman following the denial, and Debtor was then provided with his keys to the Property. *Id*.

8

at 21–22. On September 18, 2017, Plaintiff asserts a similar factual scenario. *Id*. at ¶¶ 23–28. However, on September 18, 2017, the Atlantic City Police Department ("ACPD") was called, not Debtor's counsel. *Id*. at ¶ 26. After speaking with ACPD, the property manager provided Debtor with his keys to the Property. *Id*. at ¶ 28.

On January 18, 2018, Debtor returned to the Property and requested his keys from the main office. *Ibid*. at ¶¶ 30–33. This time, a new property manager was present and denied Debtor his keys. *Id*. at ¶ 35. Again, ACPD was called. *Id*. at ¶ 35–38. In response, ACPD escorted Debtor off the property. *Id* at ¶ 36. However, the property manager later granted Debtor access to the Property but did not provide him with his keys. *Id*. at ¶ 40.   Similarly, on February 7, 2018, Debtor returned to the Property and was granted access by the property manager, but was not given his keys. *Id*. at ¶¶ 42–43.

Of particular note, Debtor does not assert that Bella sought payment for a debt at any time when he requested his keys or access to the Property. [*See generally* Dckt. No. 52]. As pled, the property manager intentionally denied Debtor his keys, of which the main office was in rightful possession, but Bella did not intentionally deny Debtor access to the Property.

The management company was not attempting to collect a debt or exercise control of the Property for any purpose connected with the Debtor's pre=petition balance. The Debtor was denied access to prevent him from further destruction of the property. Significantly, every time the Debtor gained access to the property by wielding the automatic stay as a sword, h proceeded to progressively continue gutting the unit. The automatic stay's purpose is to provide an honest debtor with a breathing space to reorganize. It was never intended to be used as cover for wrongful conduct.

      b.      **Bella's Conduct Does Not Warrant Sanctions**

Whether Bella's conduct discussed *supra*, constitutes a willful violation of the stay presents two questions. First, a question of law, did withholding Debtor's keys, which Bella rightfully possessed, violate § 362(a) as an act to collect a debt? Second, a question of fact, was the property manager acting on behalf of Bella when he refused Debtor access to the Property, such as to hold Bella vicariously liabile for the alleged stay violation.

### 1. Bella Did Not Attempt to Collect a Pre-Petition Debt and therefore Did Not Violate § 362(a)

By the property manager retaining rightful possession of Debtor's keys to the Property, Bella did not violate § 362(a) or attempt to collect a pre-petition debt. Rather, the conduct alleged by Debtor was done for the sole purpose of securing collateral and preventing the commission of waste. The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000) (citing *In re Johnson*, 63 B.R. 550, 551 (Bankr.D.Colo.1986)).

In *Camden Trust v. Handle*, the courts of New Jersey confirmed a creditor's right to protect collateral. *See Camden Trust v. Handle*, 31 Backes 97 (1942) ("[c]ommissive waste is tortious in nature, and so remediable by action on the case."). In *Camden*, the court reasoned that if the party in possession of the property, whether mortgagor or mortgagee, and whether or not in possession, commits active waste impairing the value of the collateral, such party is liable in damages. *Id*. at 103. A party in interest may have an injunction to restrain active waste. *Id*. at 106. Another example of waste deemed worthy of injunction by the *Camden* court is "willful, malicious, extravagant or 'humorous' destruction of the premises." *Id*. at 107.

The principles against destruction of property and commission of active waste present in *Camden* are applied in *Woodlands Community Association, Inc. v. Mitchell*. In *Woodlands Community Association,* the presiding New Jersey court held that changing the locks to Debtor's

10

apartment to prevent destruction of collateral does not constitute an act of exclusive control. *Woodlands Community Association, Inc. v. Mitchell*, 450 N.J. Super. 310 (2017). The court reasoned that where a creditor takes action to prevent degradation of collateral (also known as waste), including by changing the locks, such is permissible so long as the creditor did not assert exclusive control over the property prior to foreclosure and sale. *Id*.

Here, the property manager denied Debtor access to his keys to prevent Debtor's destruction of the property. Debtor was not denied access to the Property resulting from Bella's exclusive control over the unit for any other purpose. More specifically, the property manager did not deny Debtor access to the property for purposes of collecting a pre-petition debt. The property manager acted defensively.

On July 7, 2017, upon Debtor's first request for access to the Property, following petitioning for Chapter 13 relief, the property manager, Keith Silverman, denied him access to his keys. [Dckt. No. 25 at ¶¶ 18–21]. Upon Debtor's counsel informing the property manager of Debtor's active bankruptcy filing, the property manager provided Debtor with his keys and therefore, granting Debtor free access to the Property.[1] *Id*. at ¶ 22. Debtor does not allege that the locks to the Property were changed for the purpose of collecting a pre-petition debt. Likewise, Debtor does not dispute that the property manager changed the locks to the Property for the purposes of securing the premises. *See* "Exhibits 2–3." It cannot be fairly said that Bella violated the automatic stay on July 7, 2017.

On September 18, 2017,[2] when Debtor returned to the Property and was unable to access his unit with the keys provided on July 7, 2017, he again approached the property manager for

---

[1] At this time, Bella was without knowledge or notice of Debtor's petition. *See* Legal Argument (I), *supra*.
[2] At this time, Bella was without knowledge of the active bankruptcy as only verbal notice was relayed to the property manager, Keith Silverman, on July 7, 2017. *Id*. ¶¶ 21–22. Bella is an entity distinct from the property manager and property management company. At the time of Debtor's second entry, Bella remained without

11

access. *Id*. at ¶ 24. Debtor asserts that the property manager again changed the locks to the Property without his consent or knowledge. *Id*. However, the property manager did provide Debtor with keys to the Property. *Id*. at ¶ 28. Again, Debtor does not allege that the locks were changed for the purposes of collecting a pre-petition debt or stripping Debtor of his right of ownership. Similar to *Woodlands Community Ass'c*, the locks were changed for the purposes of securing the collateral. *See* "Exhibits 2–3." Moreover, the property manager denied Debtor access to keys to the Property, not Bella. *Id*. at ¶¶ 23–28. It cannot be said that Bella violated the automatic stay on September 18, 2017.

Again on January 18, 2018 and February 7, 2018, Debtor was unable to access the property because management changed the locks. *See generally ibid*. On these occasions, the property manager permitted Debtor to access the Property but did not provide him keys. *Id*. Like the Defendant in *Woodlands Community Association,* neither Bella nor the Property manager exercised exclusive control over the unit. Rather, keys were not provided to Debtor for the sole purpose of preventing waste and destruction to the Property in accordance with Debtor's past conduct. *See* "Exhibits 2–3."

Debtor was not denied access to the Property by Bella. [*See generally*, Dckt. No. 52]. Debtor was denied access to the Property by the property manager for the sole purpose of preventing the commission of waste. The act of preventing degradation of collateral is not contemplated by § 362(a) volatile of the automatic stay. Therefore, there was no violation of the automatic stay upon which to permit damages under § 362(k).

    2.    **Bella is Not Vicariously Liable for the Acts of the Property Manager**

---

knowledge of the active bankruptcy because notice was not served upon its registered agent at its registered service of proves address. *See* Legal Argument (I), *supra*.

Bella is not vicariously liable for the conduct of the property manager. The traditional "essence" of vicarious liability based on *respondeat superior* relies on the concept of employer "control" over an employee. *Galvao v. G.R. Robert Const. Co.*, 179 N.J. 462, 467 (2004). To establish *respondeat superior*, a movant must show "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Carter v. Reynolds*, 175 N.J. 402, 408–09 (2003). An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *In re Curriden*, No. 05-38352/JHW, 2007 WL 2669431, at *13 (Bankr. D.N.J. Sept. 6, 2007) (internal citation omitted).

In *In re Austin*, *respondeat superior* was addressed in the context of bankruptcy for the first time. The court explains that "[v]icarious liability as a social policy or legal fiction ignores the master's knowledge and imposes fault and financial responsibility without regard to culpability or intent." *Thatcher v. Austin (In re Austin)*, 36 B.R. 306, 311 (Bankr.M.D.Tenn.1984). "However, vicarious liability does not rise to the level of willful intent" necessary for a violation of the Bankruptcy Code. *In re Smith*, 537 B.R. 1, 13 (Bankr. M.D. Ala. 2015).

SDC Realty of Atlantic City ("SDC") was the manager of Bella. [Dckt. No. 52 at ¶ 7]. However, SDC ceased to manage Bella at some time prior to 2017. However, Keith Silverman, the owner of SDC acted as the property manager of Bella. Following management by SDC, Keith Silverman continued to act as Bella's property manager through a company known as First Day Consulting. As of November 10, 2017, Keith Silverman ceased acting as property manager of Bella. At all relevant time, of SDC, First Day Consulting, and/or Keith Silverman acted as independent contractors. Bella did not control or direct the conduct of SDC, First Day

Consulting, or Keith Silverman. Bella did not direct Keither Silverman to collect any debts from Debtor upon filing of the bankruptcy herein. Likewise, Bella did not direct of SDC, First Day Consulting, or Keith Silverman to deny Debtor access to the property. In fact, counsel to Bella directed Silverman to change the locks to the Property for purposes of preventing waste.

There is no basis upon which, to hold Bella vicarious liable for the acts of the property manager, an independent contractor, sufficient to establish willful intent as necessary for damages pursuant to § 362(k).

**III.    Damages Against Bella Pursuant to § 362(k) Are Unwarranted**

The allegedly intentional conduct complained of by Debtor was performed by the property manager, not Bella, and such conduct was not violative of the stay. *See* Legal Argument (II), *supra.* To recover damages under section 362(k) a debtor must show that (1) the debtor is an individual, (2) the respondent knew or should have known of the debtor's bankruptcy case, (3) the respondent acted intentionally, and (4) the respondent's act is prohibited by section 362(a). *In re Govero*, 439 B.R. at 921. The requirement that the violator knew of the automatic stay does not require that the violator was aware of the provisions of section 362; "it is sufficient that the violator had actual knowledge of the bankruptcy case, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir.2004), or notice of sufficient facts to cause a reasonably prudent person to make additional inquiry to determine whether a bankruptcy petition has been filed." *In re WVF Acquisition, LLC*, 420 B.R. 902, 910 (Bankr. S.D. Fla. 2009).

Bella did not violate the automatic stay. In an effort to attain brevity, the movant will refrain from rehashing the elements for imposition of sanction for violation of the automatic stay pursuant to § 362(k). As thoroughly and expansively discussed in Section II of this memorandum, Bella did not violate the automatic stay by protecting the collateral from

degradation and waste. *See* Legal Argument (II), *supra*. Debtor was gutting the Property and effectively committing active (commissive) waste. *See* "Exhibits 2–3." To preserve the collateral and maintain the common elements of Bella Condominiums, the property manager changed the locks to the Property pursuant to the advice of then legal counsel. *Id*. In doing so, neither the property manager nor Bella asserted exclusive control over the Property. *See Woodlands Community Association, Inc.*, 450 N.J. Super. 310 (2017). Debtor was ultimately able to access the Property and unfortunately, upon his entry he continued to commit waste and gut the unit. *See* "Exhibits 2–3." Bella's interest in preserving its collateral and the collateral of the mortgagor does not violate § 362(a). Therefore, there is no basis upon which to impose sanctions upon Bella for willful violation of the automatic stay.

**IV.    Punitive Damages Pursuant to § 105(a) Are Inappropriate**

Bella did not act with "reckless-or-callous disregard" warranting an award of punitive damages. Section 105(a) "grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." *In re Trafford Distrib. Ctr., Inc.*, 414 B.R. 849, 857 (Bankr. S.D. Fla. 2009). The purpose of a § 105(a) contempt sanction is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the Court's order. *In re Ramirez*, 547 B.R. 449, 453 (Bankr. S.D. Fla. 2016). The contempt power may be used only to require a party to comply with a statutory provision or court order where there is an ongoing violation. *In re Rosenberg*, 471 B.R. 307, 315 (Bankr. S.D. Fla. 2012).

Bella's efforts to protect the Property from waste do not constitute a violation of the automatic stay contemplated by § 362(a). As discussed above, Bella did not violate the automatic

stay. Without a violation of the stay, there is no basis upon which to grant Debtor an award of punitive damages. Code." *In re Trafford Distrib. Ctr., Inc.*, 414 B.R. at 857; *In re Rosenberg*, 471 B.R. at 315. Therefore, the Court must deny Debtor's request pursuant to § 362(k) of the Bankruptcy Code.

## CONCLUSION

For all the foregoing reasons, Debtor's application for contempt for violation of the automatic stay and for sanctions pursuant to 11 U.S.C. §§ 105, 362(k) as against Bella Condominium Association, Inc. should be denied.

LYDECKER DIAZ LP
Attorneys for Bella Condominium Association
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190


By: /s/ Carlos L. de Zayas_____
    Carlos L. de Zayas
    Fla. Bar No. 198617
    cdz@lydeckerdiaz.com
    eh@lydeckerdiaz.com
    gh@lydeckerdiaz.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copy of the foregoing Response was electronically served upon counsel by e-filing with the Court.


By: /s/ Carlos L. de Zayas_____
    Carlos L. de Zayas